**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GENARO LOPEZ,

      Plaintiff-Appellant,

v.

KENNETH LEMASTER, individually
and as Sheriff of Jackson County,

      Defendant-Appellee.

No. 98-6203

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-97-1699-M)

---

Submitted on the briefs:

Carson L. Carter III, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Rodney C. Ramsey, Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

---

**BARRETT** , Senior Circuit Judge.

---

Plaintiff-appellant Genaro Lopez appeals from the district court's order granting summary judgment to defendant-appellee Kenneth LeMaster on appellant's complaint brought pursuant to 42 U.S.C. § 1983. [1] We affirm in part, reverse in part and remand for further proceedings.

On October 1, 1997, appellant was arrested and placed into a general population cell in the Jackson County, Oklahoma jail. That evening, another inmate in the jail poked appellant in the stomach with a broom and accused him of "messing with" the inmate's sister and mother. The inmate also spit on appellant and threatened to kill him. Appellant notified the jailer on duty, who took appellant to his office to prepare a written statement.

While in the jailer's office, appellant told the jailer he was afraid to go back to the general population cell because he thought the inmates there would jump him. The jailer did not respond but returned appellant to the cell. Appellant claims that the jailer was within earshot of the other inmates, while they were plotting their attack on him.

Appellant lay on his bunk in the cell for about five minutes before he was attacked by two cellmates. One of the inmates held his legs while the other hit

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

him several times in the back of the head and neck. The inmates told appellant they were punishing him for being a "snitch." About five minutes later, the inmates returned with two more cellmates and the four of them jumped appellant and again beat and kicked him.

About ten minutes later, the jailer returned. Appellant told him he needed to go to the hospital. The jailer escorted appellant out of the cell and took him to the jailer's office. There, the jailer telephoned an unknown person, informed him that appellant had been jumped, and asked whether he should take him to the hospital. After this telephone conversation, the jailer told appellant that "you are still conscious, we don't have to take you." Appellant's App. at 79. The jailer gave appellant some aspirin and placed him in a different cell, but did not take him to the hospital.

Appellant was released the next morning. He went to the hospital and was treated there for contusions and strains. His physician, Dr. Altshuler, thereafter diagnosed him with "severe contusion to the skull with post-concussion syndrome" and "severe strain to the cervical, thoracic and lumbosacral spine." Id. at 182. Appellant then brought this action, seeking to hold Jackson County Sheriff Kenneth LeMaster liable both individually and in his official capacity as sheriff for failing to prevent the assault and for failing to respond to his serious medical needs.

-3-

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, applying the same standard as it applied. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). This standard requires us to examine the record in order to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the district court correctly applied the substantive law. See id. In doing so we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. See id. Where the nonmovant will bear the burden of proof at trial on a dispositive issue, however, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence, as a triable issue, of an element essential to that party's case in order to survive summary judgment. See id.

I. Liability for Failure to Protect

We recognize at the outset that neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners. See Berry v. City of Muskogee, 900 F.2d 1489, 1499 (10th Cir. 1990). They are, however, responsible

-4-

for taking reasonable measures to insure the safety of inmates.  See id.; Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). [2]

This case is complicated by the fact that appellant attributes his injuries to two different forms of failure to protect him from harm.  First, he argues that he was injured because his jailer placed him back in the general population cell after he had been threatened by his fellow inmates.  This claim challenges an episodic act or omission of a jail official, rather than a condition, practice, rule or restriction at the jail.  See Hare v. City of Corinth, 74 F.3d 633, 645 (5th Cir. 1996).  Appellant seeks to hold Sheriff LeMaster individually and officially liable for his jailer's actions on the basis of poor training and supervision.

Second, appellant challenges his jailer's failure to rescue him once the assaults began.  His primary argument on this point centers less on the jailer's conduct than on constitutionally inadequate conditions at the jail which may have prevented the jailer from acting, such as understaffing, lack of monitoring equipment or lack of a means by which inmates could contact guards.  We address each of these bases of liability in turn.

---

[2] At the time he was assaulted, appellant was not a convicted prisoner; he was a pretrial detainee.  Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.  See Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996).

A. Failure to train and supervise jailer

Appellant alleges that his jailer's acts and omissions were the result of Sheriff LeMaster's failure to provide adequate training and supervision of jail personnel. He further contends that poor training and supervision were a county policy and should be attributed to Jackson County.

Appellant provided some evidence that jailers at the county facility were poorly trained. Gordon Paige, a former jailer at the facility, testified that he received no formal training during his employment at the jail. Moreover, state jail inspectors cited the jail twice, in December 1996 and in April 1997, for deficiencies in training its jailers.

It is not enough, however, for appellant to show that there were general deficiencies in the county's training program for jailers. Rather, he must identify a specific deficiency in the county's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety.    See City of Canton v. Harris , 489 U.S. 378, 391 (1989). Appellant did not meet that burden here.

Appellant not only did not name his jailer as a defendant in this suit, he failed to identify him at all. That omission seriously undermines his attempt to hold the county liable for any actions deliberately taken by the jailer. Appellant has presented no evidence concerning deficiencies in training of the particular

-6-

jailer involved in his case. Nor has he shown that the county had a uniform policy of providing its jailers with insufficient training in the areas closely related to his ultimate injury from which we might infer that his particular jailer's training also was insufficient.

Gordon Paige admitted that the county had scheduled him for eventual CLEET training. There is no showing that appellant's jailer had not received such training, or that his failure to receive it was the cause of appellant's injuries. See City of Canton , 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). The same weaknesses exist with regard to his claim that the jailer was poorly supervised: appellant simply has failed to tie this claim to his injuries. We therefore conclude that the district court properly granted summary judgment to the county on this claim.

B. Inadequate conditions at jail

Appellant argues, in the alternative, that his injuries resulted from constitutionally infirm conditions at the jail. We consider first Sheriff LeMaster's individual liability for these conditions. To survive summary judgment on his individual claim against Sheriff LeMaster, appellant must present factual evidence that he was "incarcerated under conditions posing a substantial risk of serious harm," see Farmer , 511 U.S. at 834, and that the sheriff was aware of and

disregarded an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk, see id. at 847.[3] Having carefully reviewed the record on appeal, we conclude that appellant presented sufficient evidence on these points to survive summary judgment.

We begin with the jail standards of the Oklahoma Department of Health which provide, in pertinent part, as follows:

**310: 670-5-3 Supervision of prisoners**

(a) The movement of prisoners shall be regulated.
(b) Staff shall provide twenty-four (24) hour supervision of prisoners.
(c) Jailer posts shall be located and staffed to monitor all prisoners either physically or electronically and close enough to the living areas to respond immediately to calls for help, quell disorders and respond to emergency situations. A jailer shall be on duty at all times on each floor where prisoners are confined or the facility shall have either closed circuit TV, or a video camera and an intercommunication system to aid in the monitoring of the prisoners.
(d) There shall be sufficient staff to perform all functions relating to security, control, custody and supervision of prisoners. The staffing plan shall provide for backup assistance for all employees entering prisoner living areas.

Appellant's App. at 193.

---

[3] While recognizing the availability of an action against jail officials in their individual capacities for failing to provide humane conditions of confinement, see, e.g., Barney v. Pulsipher, 143 F.3d 1299, 1309 (10th Cir. 1998), we further recognize that the defense of qualified immunity may be available to such officials, see id. The district court did not reach the qualified immunity question.

While these standards do not establish constitutional parameters for the reasonable measures necessary to insure inmate safety, they do provide persuasive authority concerning what is required. As will be seen, the record contains ample evidence from which a finder of fact could conclude that these standards were violated, that failure to adhere to them posed a substantial risk of harm, and that Sheriff LeMaster knew of the dangerous conditions prevalent at the Jackson County jail, but failed to take reasonable measures to insure the safety of prisoners within his care.

The record discloses specific violations of jail standards. Prior to the incident involving appellant, the State of Oklahoma Jail Inspection Division issued two reports, dated December 24, 1996 and April 8, 1997, in which it identified violations of the standards. The reports noted deficiencies in staff and back up, training, and supervision of inmates at the jail. See Appellant's App. at 209-13. The April 8, 1997 report specifically noted that sentenced prisoners had not been segregated from unsentenced prisoners. See id. at 213.

We have previously mentioned the deposition of Gordon Paige, taken on September 10, 1997, in a separate suit against Jackson County. Paige was a jailer at the Jackson County jail from November 1996 through April 1, 1997. In his testimony, Paige stated that the jail was woefully understaffed and that he was often the only jailer on duty. See id. at 217-20.

There is evidence that violation of the standards posed a substantial risk of harm to prisoners. There had been at least one prior attack at the jail. The record contains an affidavit from Larry West, indicating that he spoke to Sheriff LeMaster with regard to an assault on his son at the jail that occurred in January 1997. See id. at 214. West states that he was told the jailers could do nothing to prevent attacks at the jail, and that jail personnel told him they would assign other inmates to protect his son. See id.

In his deposition testimony, appellant stated that after the attack he was placed in a cell with another, older inmate who also had been assaulted. Id. at 164. The record also contains the affidavit of Bldomero [sic] Castaned, who states that after appellant was removed from the cell the second time, Castaned also was attacked and beaten by cellmates. See id. at 167. Castaned states that there was no TV monitor, no guard in sight, and no way to call for help. See id.

The record also contains an affidavit, with accompanying letter, of Ken Barnes. See id. at 206-08. Barnes expressed his opinion as an expert in jail operations and a former Oklahoma state jail training officer, that the jail was understaffed and that "the lack of jail staff is the nexus of the assault of Mr. Lopez." Id. at 208.

Finally, Sheriff LeMaster was on notice of the danger. The record contains a report from the jail inspection division concerning a suicide at the jail that

-10-

occurred on November 4, 1997.   See id. at 223-26.  This suicide occurred after appellant had been released, and so it cannot be said to have put the sheriff on notice of danger to appellant.   Nevertheless, the report has significant probative value, because it includes an important admission by Sheriff LeMaster.

The sheriff told the investigator that he was aware of the deficiencies in staffing and surveillance at the jail and that he had tried to comply with correction of the deficiencies but that the county commissioners had failed to provide adequate funding even though they were required by statute to do so.   See id. at 225.[4]  This admission provides evidence that Sheriff LeMaster was aware of the risk of harm to inmates resulting from inadequate supervision, and failed to take reasonable measures to prevent it.   Cf. Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 646 (8th Cir. 1996) (noting acknowledgment by prison officials that additional guards were needed provided justification for injunctive relief against department of corrections).  The report finished with imperative directives from the inspector ordering the jail to install a closed circuit television or video

---

[4]        Sheriff LeMaster's statement that he had tried to correct the deficiencies but was hindered by lack of funds could conceivably justify summary judgment in his favor in his individual capacity, if it were shown that monetary restraints improperly imposed by the county frustrated his good faith efforts to correct the improper conditions.   See Hale v. Tallapoosa County, 50 F.3d 1579, 1584 (11th Cir. 1995).  He has not moved for summary judgment on this basis, however, and so we do not consider this basis for relieving him from liability.

camera and intercommunication system and to hire additional staff.     See

Appellant's App. at 226.

The district court did not discuss any of this evidence in its decision, with

the exception of the jail inspection reports. The district court ignored appellant's

argument that the sheriff was liable for failing to provide any means for him to

call for help and for failing to provide adequate staffing and supervision of the

other inmates while he was being attacked.     See id. at 125-28. We conclude that

appellant supplied sufficient evidence to survive summary judgment on his claim

against Sheriff LeMaster for failure to protect him from assault by his fellow

inmates. [5]

We turn next to appellant's assertion of county liability for failure to

protect him from the assault. Appellant's suit against Sheriff LeMaster in his

official capacity as sheriff is the equivalent of a suit against Jackson County.     See

Myers v. Oklahoma County Bd. of County Comm'rs    , 151 F.3d 1313, 1316 n.2

(10th Cir. 1998). "The County may be held liable under [] § 1983 only for its

---

[5]     Even if Sheriff LeMaster was unaware of the specific risk to appellant from his cellmates, this does not relieve him from liability. "[A] prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."     Farmer , 511 U.S. at 843.

-12-

own unconstitutional or illegal policies and not for the tortious acts of its employees." Barney, 143 F.3d at 1307.

The district court determined that appellant failed to establish causation sufficient to hold the county liable for conditions at the jail. The district court relied on the principle that to hold the county liable, a plaintiff must demonstrate that its policy was the moving force behind the injury alleged; that is, that the county took official action with a requisite degree of culpability and there is a direct causal link between the action and deprivation of federal rights. See Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

While these rigid standards of proof clearly apply to appellant's claim that an improperly-trained jailer returned him to a cell with inmates who attacked him, they do not govern his claim that the county maintained a policy of understaffing its jails which resulted in his injury. If appellant's summary judgment materials demonstrate the existence of an official municipal policy which itself violated federal law, this will satisfy his burden as to culpability, and the heightened standard applicable to causation for unauthorized actions by a municipal employee will not apply:

> [P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates

federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

Id. at 405.

It remains for appellant to show that the county or its authorized decisionmaker "intentionally deprived [him] of a federally protected right" through its unconstitutional policy. Id. Appellant has made a sufficient showing, for purposes of summary judgment, that the county maintains an unconstitutional policy of understaffing its jail and of failing to monitor inmates. He must also show, however, that this policy is maintained with the requisite degree of culpable intent. See id. The requisite degree of intent in this case is, of course, deliberate indifference to inmate health or safety. See Farmer, 511 U.S. at 834.

Appellant has shown the requisite deliberate indifference in this case in two different ways. First, there is evidence that the county's legislative body was itself deliberately indifferent to conditions at the jail. As mentioned, Sheriff LeMaster told a jail investigator that the county commissioners failed to provide funding for correction of deficiencies at the jail likely to lead to assaults against inmates even though such funding was required by the Oklahoma statutes. The sheriff did not specifically state that he requested such funds from the commissioners, or that he notified them that funds were needed; however, these are certainly reasonable inferences which may be drawn from his statement to the jail inspector.

-14-

Alternatively, the county may be liable on the basis that Sheriff LeMaster is a final policymaker with regard to its jail, such that his actions "may fairly be said to be those of the municipality." See Brown, 520 U.S. at 404. Under Oklahoma law, a county sheriff is in charge of the jail and the prisoners therein. See Okla. Stat. tit. 19, § 513; tit. 57, § 47. There is evidence sufficient to survive summary judgment showing that Sheriff LeMaster's failure to provide adequate staffing and monitoring of inmates constitutes a policy attributable to the county, and that he was deliberately indifferent to conditions at the jail.

In sum, material issues of fact remain concerning whether the county had a policy of providing insufficient monitoring and supervision of inmates and insufficient staffing, held with deliberate indifference, resulting in unconstitutionally inadequate conditions of confinement, which policy was the moving force, as a matter of law, behind the attack on appellant. We therefore reverse summary judgment on appellant's failure to protect claim against Sheriff LeMaster in his official capacity.

II. Indifference to Medical Needs

Prison officials violate the Eighth Amendment (or, in this case, the Due Process Clause), when they are deliberately indifferent to an inmate's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The district court

did not reach the issue of whether the county was deliberately indifferent to appellant's condition after the assault because it concluded that he did not have serious medical needs.

The district court concluded that appellant suffered from only "contusions and strains" resulting from the attack. Appellant's App. at 15. This conclusion somewhat understates the record. Doctor Altshuler, who saw appellant on at least two occasions after the attack, stated that he had "severe contusion to the skull with post-concussion syndrome," "contusion strain injuries to the left rib and legs," and "severe strain to the cervical, thoracic and lumbosacral spine." Id. at 182.

The doctor who saw appellant the day after the assault diagnosed him only with facial contusions, neck strain, contusions to the left chest, and contusions to the left thigh. See id. at 93. He provided appellant with a "head injury sheet," but did not note a concussion. See id. Material issues of fact remain concerning how badly appellant was hurt; thus, appellant has satisfied his summary judgment burden concerning his "serious medical needs."

We turn to the evidence of deliberate indifference. The jailer refused to take appellant to the hospital after the beating, even though appellant requested to be taken there, because appellant was not unconscious. Appellant was not seen or treated by a doctor. He was given aspirin instead.

-16-

There was no showing that Sheriff LeMaster was present after the attack or ever even saw appellant. Appellant testified, however, that the jailer who tended to him after the attack called an unknown person, who told the jailer not to take appellant to the hospital because he was still conscious. The district court reasoned that this unknown person may have been LeMaster. Issues of fact thus remain concerning whether LeMaster was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and also whether he drew that inference. See Farmer, 511 U.S. at 837, and summary judgment is thus improper.

The district court did not address whether the county, through its decisionmaker, Sheriff LeMaster, was deliberately indifferent to appellant's need for medical treatment. We decline to decide this issue, to which the district court may give further consideration on remand.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part, REVERSED in part, and REMANDED for further consideration in light of this opinion.