**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**NOV 3 1999**

**PATRICK FISHER**
**Clerk**

RHONDA UNDERWOOD DANIELS,
individually and as Administratrix of
the Estate of Christopher Daniels,

        Plaintiff - Appellee,

v.

JEFF GLASE, individually and as
Sheriff of Pontotoc County,

        Defendant - Appellant.

No. 97-7115

(E.D. Oklahoma)

(D.C. No. CV-96-614-P)

**ORDER AND JUDGMENT** *

Before **ANDERSON** and **EBEL** , Circuit Judges, and **CROW,** ** District Judge.

Rhonda Underwood Daniels, individually and as Administratrix of the

Estate of Christopher Daniels, brought this 42 U.S.C. § 1983 action against Jeff

Glase individually and as the Sheriff of Pontotoc County, Oklahoma, asserting

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**Honorable Sam A. Crow, Senior United States District Judge for the
District of Kansas, sitting by designation.

that Sheriff Glase implemented unconstitutional policies at the Pontotoc County jail and failed to properly train and supervise jail employees, resulting in the suicide of her husband, Christopher Daniels. Sheriff Glase moved for summary judgment, denying Ms. Daniels' allegations and asserting qualified immunity. The district court denied Sheriff Glase's motion, concluding that there were disputed issues of fact with respect to both the official capacity action and the Sheriff's claim of qualified immunity.

Because denials of summary judgment are not ordinarily immediately appealable, and because denials of qualified immunity in a summary judgment context are immediately appealable only in certain situations, we directed the parties to provide supplemental briefing on whether we have jurisdiction over this appeal. [1] We conclude that we have jurisdiction over this appeal and reverse the district court's denial of summary judgment on Sheriff Glase's claim of qualified immunity. We exercise pendent appellate jurisdiction over his official capacity appeal and reverse the denial of summary judgment on that claim as well.

---

[1]Sheriff Glase appeals both the denial of summary judgment on his claim of qualified immunity, applicable to him in the action against him individually, as well as the denial of summary judgment in the action against him in his official capacity. Assuming that we conclude we have jurisdiction over his qualified immunity appeal, the Sheriff asks us to assert pendent appellate jurisdiction over his official capacity appeal.

# BACKGROUND

We glean the following undisputed facts from the record. Members of the Pontotoc County Sheriff's Department arrested Christopher Daniels at approximately 6:00 a.m. on March 2, 1996, for outstanding warrants. One of the arresting officers, Deputy Allan Troy Jack, testified in his deposition and stated in his arrest report that Mr. Daniels was "extremely intoxicated," although he could "walk[] to the [deputy's] car . . . not staggering, [and] with no help." Jack Dep. at 10, 11 & Ex. 1, Appellant's App. Vol. II at 451, 452, 468. While booking Mr. Daniels into the Pontotoc County Jail, Deputy Jack instructed Mr. Daniels to remove his belt and boots. Mr. Daniels responded, "There's other ways to kill yourself." Id. at 468. Deputy Jack then asked Mr. Daniels, "So are you saying you're suicidal?" to which Mr. Daniels responded "No." Id.

According to the Minimum Jail Inspection Standards for the State of Oklahoma, applicable to all Oklahoma jails, including the one in Pontotoc County, a medical screening evaluation must be conducted for anyone booked into the jail. Appellant's App. Vol. I at 161. Sheriff Glase testified that it is the "policy" of the jail to fill out a form titled "Prisoner Processing and Detention Form" for each jail admittee. This form includes an evaluation of the prisoner's physical and mental condition. It is uncontested that the parts of the form for an evaluation of Mr. Daniels' physical and mental condition were not filled out.

-3-

Ethel Winn, the jailer on duty when Mr. Daniels was arrested, testified that Mr. Daniels "did not answer" questions she asked him, although she indicated she felt he was "capable of answering the questions." Winn Dep. at 11, Appellant's App. Vol. II at 480. Sheriff Glase testified that the complete failure to fill out Mr. Daniels' form was the "only" such failure of which he was aware. He stated he "had some [situations] where certain questions were not done during the book[-]in process, but never anything like this that I know of." Glase Dep. at 31, id. at 411. The Jail Standards also require hourly visual checks of prisoners, and more frequent inspections for inmates who may be a suicide risk. Appellant's App. Vol. I at 165, 173.

According to Ms. Winn's statement describing Mr. Daniels' arrest, he was placed in the "holding tank" for intoxicated individuals at approximately 6:30 a.m. Winn Dep. Ex. 1, Appellant's App. Vol. II at 494. Sometime between 6:30 and 8:00 a.m., Mr. Daniels hung himself by his T-shirt from the door of the holding tank. No jail employee had checked on Mr. Daniels after he was placed in the tank until his body was found.

Sheriff Glase was the Sheriff of Pontotoc County with responsibility over the jail at the time of Mr. Daniels' arrest and suicide. It is undisputed that he had no personal involvement in the arrest and booking of Mr. Daniels, nor did he learn of the suicide until after it happened. There is no evidence that any actual

-4-

or attempted suicides had ever occurred in the Pontotoc County Jail until Mr. Daniels' suicide. Only Ms. Winn was on duty at the jail at the time of Mr. Daniels' suicide. When asked if it was "normal practice to have just one person on duty at night" Deputy Jack responded, "That's all they ever have on duty night or day." Jack Dep. at 16, id. at 457. Ms. Winn had worked at the jail for thirteen years and received yearly training, including on suicidal inmates. Winn Dep. at 13, id. at 482.

Ms. Daniels filed this section 1983 action against Pontotoc County, by and through the Board of County Commissioners, and Sheriff Glase, both individually and as Sheriff. [2] She alleged that Sheriff Glase and Pontotoc County had "a policy, custom or habit of providing willfully inadequate medical, psychiatric care to the detainees of that facility, ignoring requests or situations that required psychiatric attention, and acting with deliberate indifference to serious medical needs of its detainees." Complaint at ¶ 39, Appellant's App. Vol. I at 8. She also asserted that Sheriff Glase failed to properly staff the jail, or to train and supervise jail personnel, and that failure resulted in Mr. Daniels' suicide.

Sheriff Glase filed a motion for summary judgment, arguing that Ms. Daniels "cannot identify any policy or custom of the Sheriff's Department that

---

[2]Neither the jailer, Ms. Winn, nor Deputy Jack, the arresting officer, are parties to this action.

deprived [Mr. Daniels] of a constitutional right"; that any unconstitutional conduct occurring in connection with Mr. Daniels' arrest and booking was an "isolated occurrence" from which no unconstitutional policy can be inferred; and Sheriff Glase is entitled to qualified immunity because Ms. Daniels has not identified a clearly established constitutional right she believes Sheriff Glase violated. Appellant's App. Vol. I at 31.

The district court denied summary judgment on the claim against Sheriff Glase in his individual capacity for failure to train and supervise his employees, as well as on Sheriff Glase's claim of qualified immunity, concluding that there remain "questions of fact" and "sufficient evidence" from which a jury could conclude that Sheriff Glase violated Mr. Daniels' constitutional rights. It also denied summary judgment on Ms. Daniels' claims against Sheriff Glase in his official capacity.

Sheriff Glase appeals, arguing (1) we have jurisdiction over this appeal because the qualified immunity issue presents the purely legal question of whether the undisputed facts establish that Sheriff Glase violated clearly established law and we should exercise pendent appellate jurisdiction over the official capacity claim; (2) Sheriff Glase is entitled to summary judgment on his claim of qualified immunity because there is "no clearly established law requiring the sheriff to add additional staff to the jail or train his officers differently under the circumstances

involved in this case," Defendant/Appellant's Br. at 10; and (3) Sheriff Glase is entitled to summary judgment on the official capacity claim "because no policy or custom of the Sheriff's Department deprived Mr. Daniels of a constitutional right." Id. at 15.

## DISCUSSION

### I. Jurisdiction

"'Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law.'" Clanton v. Cooper, 129 F.3d 1147, 1152 (10th Cir. 1997) (quoting Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997)); see also Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Johnson v. Jones, 515 U.S. 304, 312-14 (1995). As the Supreme Court stated in Johnson:

> a district court's order denying a defendant's motion for summary judgment [is] an immediately appealable "collateral order" (i.e. a "final decision") under Cohen [v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)], where (1) the defendant [is] a public official asserting a defense of "qualified immunity," and (2) the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[] a violation of "clearly established" law.

Johnson, 515 U.S. at 311. An immediately appealable "abstract issue[] of law" includes "[a] determination that the law allegedly violated by the defendant was clearly established at the time of the challenged actions," or "[a] determination that under either party's version of the facts the defendant violated clearly

established law." Foote, 118 F.3d at 1422. By contrast, if the district court's order denying summary judgment "decides nothing more than whether the evidence could support a finding that particular conduct occurred" or if it "merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment," it is not immediately appealable. Id.

If, however, the district court's order denying summary judgment is insufficiently explanatory, "we may review the entire record, construing the evidence in the light most favorable to the plaintiff, and determine de novo whether the plaintiff in fact presented sufficient evidence to forestall summary judgment on the issue of qualified immunity." Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1259 (10th Cir. 1998). By contrast, "where the district court makes a legal finding and states specific facts upon which that finding is based," we lack jurisdiction "to delve behind the ruling and review the record to determine if the district court correctly interpreted those facts to find a genuine dispute." Id.

We conclude that we have jurisdiction over this appeal. Because the essential facts material to our resolution of the qualified immunity issue are undisputed, we review the purely legal issue of "whether [Sheriff Glase's

conduct], as alleged by [Ms. Daniels], violated clearly established law." Clanton ,

129 F.3d at 1153. We turn, therefore, to the merits of that legal issue.


## II. Qualified Immunity

The Supreme Court has recently reiterated:

the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.

County of Sacramento v. Lewis , 523 U.S. 833, 841 n.5 (1998) (citing Siegert v.

Gilley , 500 U.S. 226, 232 (1991)); see also Tonkovich v. Kansas Bd. of Regents ,

159 F.3d 504, 516 (10th Cir. 1998). We therefore "use a two-part framework to

analyze the issue of qualified immunity." Tonkovich , 159 F.3d at 516. We first

consider "whether the plaintiff has sufficiently alleged that the defendant violated

a statutory or constitutional right." Id. Only if we answer that first question

affirmatively do we consider whether the right was clearly established.

Ms. Daniels alleges that Sheriff Glase was deliberately indifferent to Mr.

Daniels' serious medical needs and that he failed to adequately staff the jail and

supervise jail personnel, resulting in their deliberate indifference towards Mr.

Daniels' serious medical needs. We analyze claims alleging a Fourteenth

Amendment Due Process violation resulting from the suicide of a pretrial detainee

-9-

in a local jail under the deliberate indifference standard applicable to prison inmates under the Eighth Amendment. Barrie v. Grand County, 119 F.3d 862, 868 (10th Cir. 1997). Accordingly, "the custodian must be 'deliberately indifferent' to a substantial risk of suicide." Id. at 869 (emphasis added). We have further held that "'an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights.'" Id. (quoting Berry v. City of Muskogee, 900 F.2d 1489, 1496 (10th Cir. 1990)) (emphasis added); see also Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) ("'The deliberate standard is met only if there were a strong likelihood, rather than a mere possibility, that self-infliction of harm would result.'") (quoting Bell v. Stigers, 937 F.2d 1340, 1343 (8th Cir. 1991)).

Thus, to establish a claim against Sheriff Glase individually, Ms. Daniels must show "that the sheriff was aware of and disregarded an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk." Lopez v. Lemaster, 172 F.3d 756, 761 (10th Cir. 1999). She alleges that Sheriff Glase had a policy or practice of understaffing the jail and permitting incomplete medical evaluation forms at book-in, all of which demonstrated deliberate indifference to the medical needs of detainees such as Mr. Daniels.

-10-

Ms. Daniels also alleges Sheriff Glase failed to adequately train and supervise jail personnel. To state a constitutional violation on this basis, Ms. Daniels "must identify a specific deficiency in the county's training program closely related to [Mr. Daniels'] ultimate injury, and must prove that the deficiency in training actually caused [jail personnel] to act with deliberate indifference." Id. at 760.

We hold that Ms. Daniels has not demonstrated the violation of a constitutional right by Sheriff Glase. "Liability under the Due Process Clause may not be based on negligent action." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1239 (10th Cir. 1999). A single instance of negligent, even grossly negligent, conduct does not evidence an unconstitutional policy nor establish the violation of a constitutional right.

In this case, the facts, as alleged by Ms. Daniels, establish only the following: an intoxicated but conscious Mr. Daniels was booked into jail. He made a remark suggesting that the thought of suicide had crossed his mind, but, when specifically asked if he was suicidal, he specifically stated, "no." A medical evaluation form was not filled out for him, and the undisputed facts show that this was the only time of which Sheriff Glase was aware that there was a complete failure to fill out the form. Ms. Daniels identifies nothing *specific* that the completion of the form would have revealed about Mr. Daniels to alert jail

-11-

personnel that he was a serious suicide risk. She identifies no other information or facts which would or should have alerted jail personnel that Mr. Daniels was a serious suicide risk. One jailer was on duty at the jail. There had been no prior suicide attempts nor successful suicides at the jail. No other facts suggest that the jail had experienced problems of any kind arising from jail staffing levels or training of jail personnel, nor that Sheriff Glase was aware of problems arising from his staffing levels or other jail procedures. In sum, Ms. Daniels has alleged, at most, negligence in the treatment of Mr. Daniels by jail personnel. Moreover, and crucially, she has failed to demonstrate that the failure to fill out the medical form, or the jail staffing level, caused Mr. Daniels' suicide. "[Ms. Daniels] has simply failed to tie [her] claim to [Mr. Daniels'] injuries." Lopez, 172 F.3d at 760. Thus, the undisputed facts, as alleged by Ms. Daniels, fail to demonstrate that Sheriff Glase violated Mr. Daniels' constitutional rights.

We therefore conclude that Ms. Daniels has failed to meet the first part of the two-part inquiry into qualified immunity, in that she has failed to allege the deprivation of a constitutional right at all. We accordingly need proceed no further with respect to qualified immunity, and we hold the district court erred in denying Sheriff's Glase's motion for summary judgment on qualified immunity grounds.

### III. Municipal Liability

Ms. Daniels' claim against Sheriff Glase in his official capacity as sheriff is simply another way of suing Pontotoc County itself. Lopez, 172 F.3d at 762. Sheriff Glase asks us to exercise pendent appellate jurisdiction over his appeal of the denial of summary judgment on this claim. We may consider the appeal of this issue "if we find that [it is] 'inextricably intertwined' with [Sheriff Glase's] appeal of . . . the qualified immunity issue for which we have jurisdiction, and if we choose to exercise pendant appellate jurisdiction." Malik v. Arapahoe County Dep't of Soc. Servs., Nos. 97-1476, 97-1477, 1999 WL 713247 at *9 (10th Cir. Sept. 14, 1999) (quoting Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995)). "Inextricably intertwined" issues are those "in which 'the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well.'" Id. (quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995)). The exercise of pendent appellate jurisdiction is discretionary. United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d 1109, 1114 (10th Cir. 1999). We have cautioned that it should be used sparingly. Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1264 (10th Cir. 1998) (citing Swint, 514 U.S. at 50-51).

We have held that the exercise of "pendent jurisdiction over interlocutory appeals must be narrowly focused on those claims the review of which would not require the consideration of legal or factual matters distinct from those raised by the claims over which we unquestionably have jurisdiction." Malik, 1999 WL 713247 at *10. Such is the case here with respect to Ms. Daniels' claim against Sheriff Glase in his official capacity. We concluded above that Ms. Daniels has failed to alleged the deprivation of a constitutional right in connection with Mr. Daniels' suicide. That necessarily includes the conclusion that the County cannot be liable. "[I]n order to hold a municipality liable for an employee's constitutional violation, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1320 (10th Cir. 1998). On the undisputed facts, Ms. Daniels has shown neither. See Moore, 57 F.3d at 929-30 (holding that conclusion that police chief had not violated plaintiff's constitutional rights necessarily resolved claim against municipality for that same violation).

We therefore REVERSE the district court's denial of summary judgment to Sheriff Glase on the individual and official capacity claims and REMAND for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge