**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 10 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CRAIG BRYAN NORTHINGTON,

Plaintiff-Appellant,

v.

ARISTEDES W. ZAVARAS,
Executive Director, Colorado
Department of Corrections;
ROBERT FURLONG, Superintendent;
CPT. R. DALE KENNY, Supervisor;
ENDRE SAMU, AAHB Hearing
Officer; SGT. MICKENS;
OFFICER BLASSINGAME;
OFFICER MORRISSEY; DENNIS
HOUGHNON, Investigator and all
other persons presently unknown,
Limon Correctional Facility,

Defendants-Appellees.

No. 99-1184
(D.C. No. 94-N-449)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **McKAY** , and **BRISCOE** , Circuit Judges.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this prisoner civil rights action, plaintiff-appellant Craig Bryan Northington made six claims for relief against a number of defendants employed by the Colorado Department of Corrections at the Limon Correctional Facility. The district court entered summary judgment in favor of all defendants and Northington now appeals this ruling. We affirm. [1]

**FACTS**

Generally, Northington maintains that defendants singled him out for mistreatment in retaliation for his legal efforts on behalf of minority inmates and on his own behalf. In prison disciplinary proceedings, Northington was an authorized inmate representative, a prison job which entailed investigating and

---

[1] We note that the defendants listed in the caption and mentioned in the body of the filings appear to change from one submission to the next, sometimes without explanation. Northington has conceded that defendant Zavaras is not a proper party to this case and that he is not pursuing his claims against certain other parties. See Reply Br. at 11 (acknowledging lack of allegations against defendant Conrad and, perhaps, defendant Koch). Northington's appellate briefs allege wrongful actions on the part of defendants Bergman, Carpenter, and McGowan, but do not list them in the appellate caption. In light of our disposition of this case, however, we need not sort through the various permutations of named defendants.

defending inmates accused of violating the code of penal discipline. During a series of hearings scheduled from February 1993 through January 1994, Northington attempted to defend Hispanic inmates by arguing that the accusations against them were racially motivated. Defendant Samu allegedly discouraged him from pursuing this tactic by kicking him under the table at hearings, telling him to keep his mouth shut, attempting to turn accused inmates against him by disparaging his effectiveness as an inmate representative, and threatening him with numerous other retaliatory measures. In addition, defendants Kenney, Morrissey, Houghnon, Mickens, Bergman, Carpenter, and McGowan allegedly threatened or undertook various reprisals in reaction to Northington's continued claims of bias in the disciplinary system.

Northington also filed numerous grievances in the prison system and complaints in federal court asserting violations of his own rights. [2] According to

---

[2]     Northington was at least partially successful in his court actions. See, e.g., Northington v. Marin, 102 F.3d 1564 (10th Cir. 1996) (affirming a judgment entered against a Denver county deputy sheriff for Eighth Amendment violations); Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (affirming in part and reversing in part the dismissal of civil rights claims against Denver sheriff's deputies, correction officers, and the Denver Sheriff's Department); Northington v. Furlong, No. 96-1260, 1997 WL 242255 (10th Cir. May 12, 1997) (unpublished) (affirming in part and reversing in part the entry of summary judgment on civil rights claims concerning procedures related to urine testing and resulting disciplinary charges); Northington v. McGoff, No. 91-1252, 1992 WL 149918 (10th Cir. June 25, 1992) (unpublished) (affirming in part and reversing in part the dismissal of a § 1983 action alleging that employees of the Colorado
(continued...)

-3-

Northington, his litigation activities resulted in additional mistreatment: punching in the arm by defendant Blassingame, whose wife had been named in one of his lawsuits; disproportionate cell and body searches; seizure of legal materials; opening of legal mail outside of his presence; unfair administration of urine testing, resulting in wrongful charges of failure to obey an order and a positive urinalysis for opiates; biased proceedings in connection with the urinalysis charges; imposition of unauthorized and unjustified punishment for urinalysis offenses, including a lengthy suspension of visitation rights and the revocation of his position as inmate representative; and an involuntary transfer, without the opportunity for a hearing, to the San Carlos Correctional Facility, a prison facility for inmates who take medications for mental illnesses.

In his complaint, Northington made claims under 42 U.S.C. §§ 1981, 1983, and 1985, alleging that the defendants' retaliatory actions and related conspiracy violated his constitutional rights to equal protection of the laws, free speech, access to the courts and counsel, due process of law, and also his rights to be free from unreasonable search and seizure and cruel and unusual punishment. Additionally, Northington asserted pendent state law claims. In a detailed recommendation, the magistrate judge concluded that defendants were entitled to

---

[2](...continued)
state prison system violated his due process rights and retaliated against him).

-4-

summary judgment on Northington's federal claims. The district court adopted the magistrate's recommendation and entered summary judgment in favor of defendants. This appeal followed.

## DISCUSSION

We review the grant of summary judgment de novo, applying the same legal standard as the district court under Fed. R. Civ. P. 56(c). See Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Lopez, 172 F.3d at 759 (citation omitted). "Where the nonmovant will bear the burden of proof at trial on a dispositive issue, however, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence, as a triable issue, of an element essential to that party's case in order to survive summary judgment." Id.

The allegations in this case center on Northington's perception that defendants' actions were all taken in retaliation for either his vigorous defense of other inmates or pursuit of his own litigation. "We have held that [p]rison officials may not retaliate against or harass an inmate because of the inmate's

exercise of his constitutional rights.  This principle applies even where the action

taken in retaliation would be otherwise permissible."  Peterson v. Shanks ,

149 F.3d 1140, 1144 (10th Cir. 1998) (quotations and citation omitted; alteration

in original).  Nonetheless,

> an inmate is not inoculated from the normal conditions of
> confinement experienced by convicted felons serving time in prison
> merely because he has engaged in protected activity.  Accordingly,
> a plaintiff must prove that 'but for' the retaliatory motive, the
> incidents to which he refers . . . would not have taken place.  An
> inmate claiming retaliation must allege *specific facts* showing
> retaliation because of the exercise of the prisoner's constitutional
> rights.

Id. (quotations and citation omitted).

Allegations of retaliation for a prisoner's efforts in defending and assisting

other inmates have been addressed in  Smith v. Maschner , 899 F.2d 940 (10th Cir.

1990).  In that case, we stated:

> [The plaintiff] alleged that defendants retaliated in response to his
> "jailhouse lawyering" on behalf of other inmates.  [The plaintiff]
> does not have a protected interest in providing legal representation to
> other inmates. . . .  [The plaintiff] argues only that his fellow inmates
> were deprived of his assistance.  Prison inmates do not possess the
> right to a particular prisoner's help in preparing their legal materials,
> so long as prison officials make other assistance available.  Thus,
> even assuming [the plaintiff] would have standing to assert his fellow
> prisoners' constitutional claims, there are no claims to assert.

Id. at 950 (citations omitted).  We are bound by this prior circuit authority. [3]

---

[3]  We recognize that other federal courts have held that, if a state creates

(continued...)

-6-

Moreover, Northington has not asserted that he assisted the minority

inmates in an attempt to change prisoners' conditions of confinement generally, or

that his efforts went beyond legal action pursued for the benefit of the represented

inmates.  See id. (holding that litigation undertaken to "bring about social change

and protect constitutional rights in the prison is a 'form of political expression'

and 'political association'" protected by the First Amendment) (quotation

omitted).  Accordingly, the actions Northington ties to his aid of other inmates

cannot support a claim of retaliation for the exercise of his own constitutional

rights. [4]

---

[3](...continued)
a position such as inmate representative, it must allow the representative
to engage in his duties without fear of retaliation.        See Newsom v. Norris ,
888 F.2d 371, 375 (6th Cir. 1989);    Rizzo v. Dawson , 778 F.2d 527, 532 (9th Cir.
1985);  Alnutt v. Cleary , 913 F. Supp. 160, 169-70 (W.D.N.Y. 1996);     Wiideman v.
Angelone , 848 F. Supp. 136, 139 (D. Nev. 1994);    see also  Thaddeus-X v. Blatter   ,
175 F.3d 378, 407 (6th Cir. 1999) (Merritt, Circuit Judge, concurring in part and
dissenting in part) (stating that prison officials may not approve inmate
representation, then withdraw the consent in retaliation for a lawsuit that
criticized prison officials without violating the right of access provision of the
First Amendment).   But see  Tighe v. Wall , 100 F.3d 41, 43 n.1 (5th Cir. 1996)
(rejecting the reasoning of courts which have found that inmates have a First
Amendment right to represent other inmates).

[4]        Citing  Thaddeus-X v. Blatter   , 110 F.3d 1233 (6th Cir. 1997),     vacated
and superseded   , 175 F.3d 378 (6th Cir. 1999), Northington argues on appeal that
he has standing to raise the other inmates' claims because the inmates lacked the
language ability and legal skills to pursue their own grievances and court cases.
See Smith , 899 F.2d at 950 (stating that there is controversy in the circuits on the
issue of whether a prisoner has standing to assert his fellow inmates' right of
access).  We decline to address this issue here.      See Tele-Communications, Inc. v.
(continued...)

Northington's claims of retaliation for the pursuit of his personal grievances and lawsuits are also insufficient to withstand summary judgment. Although Northington provides specific instances of unfavorable treatment, he fails to show that, but for the alleged retaliatory motive, he would have been treated differently. See Smith, 899 F.2d at 949-50. The defendants have come forward with reasons for essentially every action taken against him. For instance, they have provided evidence that nonrandom drug testing and searches were related to information that Northington was attempting to bring contraband into the prison after returning from a court appearance, that Northington's punishment was imposed for a positive urinalysis and failure to obey an order, and that his legal mail was unintentionally opened in the course of handling a high volume of inmate mail. [5] For his part, Northington presents no rebuttal evidence from which a jury could reasonably find that defendants' allegedly retaliatory motives were the "but for" cause of their actions. Because Northington's litigation efforts

---

[4](...continued)
Commissioner, 104 F.3d 1229, 1232 (10th Cir. 1997) (noting that "[g]enerally, an appellate court will not consider an issue raised for the first time on appeal").

[5]    Defendants do not attempt to justify the incident in which Blassingame punched Northington on the arm. This action, however, is not sufficient to support a civil rights claim. See Ingraham v. Wright, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned.").

ranged over such a lengthy period, timing alone does not supply an inference of retaliation.

Finally, we have analyzed Northington's allegations without consideration of his retaliation theory. After a review of the record, we conclude that none of Northington's claims establishes a stand-alone constitutional violation. To illustrate, Northington does not show that his transfer to a prison facility with the capability of treating mental patients stigmatized him, subjected him to unwanted treatment, or affected his sentence. Cf. Vitek v. Jones, 445 U.S. 480, 493-97 (1980) (holding that involuntary transfer to state mental hospital, in order to subject prisoner to unwanted psychiatric treatment, triggered due process rights). Northington questions only the timing of the transfer. The alleged punching from defendant Blassingame, kicking from defendant Samu, and attempts to turn the other inmates against him were not sufficiently serious to amount to cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (requiring, for Eighth Amendment claim, allegations that defendants acted with deliberate indifference to a substantial risk of serious harm). Similarly, the claims of unjustified strip searches, cell searches, and urine testing are not backed with any showing that these invasions of privacy were unreasonable. See Bell v. Wolfish, 441 U.S. 520, 559 (1979) (analyzing such claims with a consideration of the scope of the intrusion, the reasonableness of a search, the manner in which it is conducted, the justification for initiating it). Regarding the opening of his

legal mail and temporary deprivation of his legal materials, there is no evidence that these actions caused actual injury or "hindered [his] efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). Standing alone, or taken together as evidence of a conspiracy, Northington's allegations do not demonstrate a violation of his constitutional rights.

## CONCLUSION

For the reasons stated above, the district court judgment is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge

-10-