**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 13, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CRAIG C. RALSTON,

        Plaintiff - Appellee,

v.

CHAPLAIN HOSEA CANNON,

        Defendant - Appellant.

No. 16-1372

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:14-CV-00247-CBS)**

_____

David C. Cooperstein, Assistant City Attorney, Denver City Attorney's Office, Denver, Colorado, for Appellant.

Katayoun A. Donnelly, Azizpour Donnelly LLC, Denver, Colorado, Court-appointed pro bono counsel for Appellee.

_____

Before **MORITZ**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

# I. INTRODUCTION

Craig Ralston, a Denver Detention Center ("DDC") prisoner, brought this 42 U.S.C. § 1983 civil rights suit against Hosea Cannon.[1] Ralston alleged Cannon, the official charged with "coordinating, directing[,] and monitoring the religious activities" of DDC inmates, violated his First Amendment right to free exercise by denying his request for a kosher diet. Cannon moved for summary judgment on the basis of qualified immunity, asserting his conduct was, at most, negligent and, thus, did not rise to the level of a First Amendment violation. The district court denied Cannon's request for qualified immunity. The district court concluded it was clearly established that a kosher-meal accommodation is necessary if Ralston has an honest belief the accommodation is important to his free exercise of religion. Importantly, the district court further concluded the record, read in the light most favorable to Ralston, was sufficient to allow a reasonable juror to find Cannon consciously or intentionally interfered with Ralston's right to free exercise by denying the kosher-diet request.

Cannon appeals the district court's order denying his request for qualified immunity. Each aspect of Cannon's appeal, however, amounts to a challenge to the district court's determinations of evidentiary sufficiency. Accordingly, this

---

[1]Ralston also brought claims against two other defendants, but those claims were dismissed by the district court at the pleading stage. No issues relating to the dismissal of the claims against the other two defendants are before the court in this appeal.

court lacks jurisdiction over this interlocutory appeal. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) (holding that appellate courts lack interlocutory jurisdiction in qualified-immunity based appeals from the denial of summary judgment to review "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial"); *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) ("[T]he Supreme Court [has] indicated that, at the summary judgment stage at least, it is generally the district court's exclusive job to determine which *facts* a jury could reasonably find from the evidence presented to it by the litigants."). Accordingly, we **dismiss** Cannon's appeal for lack of appellate jurisdiction.

## II. BACKGROUND

### A. Factual Background

The district court noted that the following generalized factual background was undisputed:

> Craig Ralston, a member of the Messianic Jewish faith, was arrested and booked into Denver Detention Center ("DDC") on December 20, 2013. At all relevant times to this claim, Hosea Cannon served as the Program Director and Chaplain for Denver Sheriff's Department. Chaplain Cannon's job responsibilities involve "coordinating, directing and monitoring the religious activities and services of inmates of all faiths represented by the inmate population," which include special diet requests. During the booking process, Mr. Ralston completed the "Intake Pre-Classification Questionnaire" and apparently circled "NO" to the question "Does your religious affiliation require a special diet?" Soon after booking, Mr. Ralston filed a step one grievance requesting a kosher diet in accordance with his religious beliefs as a Messianic Jew. On January 2, 2014, Chaplain Cannon denied the request based on Mr. Ralston's response to the question concerning dietary restrictions and "Chaplain

-3-

Cannon's prior correspondence with a Messianic Jewish consultant who [advised] that the DDC's standard, non-pork, non-shellfish diet met the dietary requirements of Messianic Jewish inmates." On January 28, 2014, Mr. Ralston submitted a "Religious Special Diet Application," which included information pertaining to his current religious affiliation as well as "some background as to his religious history and upbringing." That same day, Mr. Ralston filed this action in the United States District Court for the District of Colorado. On February 4, 2014, Chaplain Cannon approved Mr. Ralston's application for a kosher diet.

Dist. Ct. Order at 2 (record citations omitted).

## B. Procedural Background

Cannon filed a motion for summary judgment, claiming he was entitled to qualified immunity.[2] He asserted that to establish a violation of the Free Exercise Clause, Ralston "must show that his sincerely held religious beliefs were substantially burdened by . . . Cannon's conduct. To do so, he must prove deliberate, conscious or intentional interference with his right to free exercise." Cannon's Mot. for Summ. J., Appellant's App'x at 65 (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069-70 (10th Cir. 2009)).[3] Cannon claimed the evidence

---

[2]*See generally Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (holding that when a defendant raises the issue of qualified immunity, the burden shifts to the plaintiff to meet a heavy two-part burden of showing: (1) the defendant violated a constitutional right; and (2) the constitutional right was clearly established).

[3]Although Cannon relies on *Gallagher* as setting the relevant parameters of a § 1983 free exercise claim, there is reason to doubt whether "conscious" interference with an individual's right to free exercise amounts to a viable § 1983 First Amendment claim for damages. *Gallagher v. Shelton* did cite with approval a Fourth Circuit case holding that to state a valid First Amendment claim, a

(continued...)

-4-

plaintiff can prove either conscious *or* intentional interference with the right to free exercise. 587 F.3d 1063, 1069-70 (10th Cir. 2009) (citing *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006)); *see also McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012) (citing *Gallagher* for this standard). In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a case issued just a few months before the issuance of *Gallagher*, the Supreme Court considered the validity of a complaint alleging federal officials violated the plaintiff's First and Fifth Amendment rights by imposing harsh conditions of confinement because of race, religion, and national origin. *Id.* at 668-69. *Iqbal* found it necessary to set out "the elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity." *Id.* at 675. The Court stated as follows:

> The factors necessary to establish a [constitutional] violation will vary with the constitutional provision at issue. Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540-541 (1993) . . . ; *Washington v. Davis*, 426 U.S. 229, 240 (1976) . . . . Under extant precedent purposeful discrimination requires more than "intent as volition or intent as awareness of consequences." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). It instead involves a decisionmaker's undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Ibid.* It follows that, to state a claim based on a violation of a clearly established right, respondent must plead sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin.

*Id.* at 676-77. Because the propriety of the rule set out in *Gallagher* vis-a-vis the above-quoted language from *Iqbal* was not raised on appeal by Cannon, and because this court lacks jurisdiction over the issues Cannon did raise on appeal, it is unnecessary for this court to attempt to reconcile *Gallagher* and *Iqbal*. Instead, we leave it to the district court's discretion, given Cannon's reliance on the *Gallagher* standard throughout this litigation, whether to take up this question on

(continued...)

adduced by Ralston failed to satisfy that rigorous standard. In particular, Cannon argued the evidence demonstrated he did not have the necessary information regarding Ralston's religious background until January 28, 2014, and he approved a kosher diet on February 4, 2014. Before that time, Cannon claimed, he reasonably relied on two pieces of information—Ralston's disclaimer of the need for a kosher diet on the intake form and the advice of a religious consultant regarding Messianic Judaism—to conclude Ralston was not entitled to kosher meals. According to Cannon, his conduct, which was, at most, negligent, did not amount to a constitutional violation. Relying on this same set of assumed facts, Cannon asserted Ralston's right to an accommodation was not clearly established during the requisite time frame.

The district court denied Cannon's request for summary judgment. It noted that, contrary to Cannon's contentions, the record evidence, viewed in Ralston's favor, demonstrated a genuine issue of fact existed as to the "number and nature of communications" between Cannon and Ralston.[4] Given this assumed set of

---

[3](...continued)
remand and revisit the propriety of summary judgment.

[4]The district court determined a reasonable jury could believe Ralston made numerous efforts to convey to Cannon his need for a religious accommodation, in the nature of a kosher meal, during the time period in question:

> Unsurprisingly, [Ralston's] account of his efforts to exhaust DDC's administrative remedies differs significantly from [Cannon's] position that Mr. Ralston only communicated once to DDC officials
>
> (continued...)

facts (i.e., repeated requests for a kosher diet on the part of Ralston, coupled with

an explanation of why his particular religious belief required such a diet), the

district court rejected Cannon's assertion that his denial of a kosher diet amounted

---

[4](...continued)
about a kosher diet request through a grievance form submitted to Chaplain Cannon on December 23, 2013. The Complaint [which is sworn under penalty of perjury and is, thus, treated as an affidavit] provides a fairly detailed timeline regarding Mr. Ralston's attempts to obtain a kosher diet: (1) "On December 23, 2013, the plaintiff sent an informal "Kite" to Chaplain Cannon explaining that the plaintiff is Messianic Jewish and requires a Kosher meal as he follows strict Kosher guidelines of the Jewish faith;" (2) "Chaplain Cannon replied to the kite that the non-pork, non-shellfish regular diet meets the standard for Messianic Jews;" (3) "The plaintiff replied via another kite stating the regular diet does NOT meet the stricter kosher standards which the plaintiff and many other Messianic Jews adhere to and follow," to which Chaplain Cannon did not respond; (4) "On December 30, 2013, the plaintiff filed a formal Grievance reiterating what he had stated in the informal kites and specified the remedy he sought was to be placed immediately on a strict Kosher diet;" (5) "On January 2, 2014, Chaplain Cannon responded to the formal grievance with the same response he had used in the informal kites, that the non-pork, non-shellfish diet met the standard for Messianic Jews;" (6) "On January 5, 2014, plaintiff sent another kite to Chaplain Cannon asking for the contact information of the Messianic Jewish Rabbi that Chaplain Cannon had claimed to have consulted;" (7) "On January 6, 2014, Chaplain Cannon responded to the kite by forwarding an email from Prison Ministry Administrator Charmayne Rohde stating that a non-pork, non-shellfish diet could meet the standard if a person chose NOT to follow the stricter kosher standards;" (8) "Plaintiff sent another kite to Chaplain [Cannon] on or about January 10, 2014, stating that he does follow the stricter standards so please have the food prep. department place his [sic] on a strict kosher diet," to which Chaplain Cannon never responded
. . . .

Dist. Ct. Order at 5-6 (footnote and record citations omitted).

to nothing more than, at most, an isolated act of negligence.[5] Instead, the district court concluded a reasonable juror could find Cannon "consciously or intentionally interfered with [Ralston's] free exercise rights by denying the kosher diet request on January 2, 2014." Dist. Ct. Order at 10. By that date, the district court noted, a reasonable juror could find Ralston had repeatedly and steadfastly informed Cannon that in his practice of Messianic Judaism he was compelled to keep a kosher diet and that the advice of the religious consultant about the appropriateness of the regular DDC menu was not consistent with Ralston's particular religious practices. *Id.*; *see also LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) ("Differing beliefs and practices are not uncommon among

---

[5]The district court concluded as follows:

> Viewing the facts in the light most favorable to the non-moving party, the court finds [Cannon's] denial of [Ralston's] request amounts to more than an isolated act of negligence. *Gallagher*, 587 F.3d at 1070 (citations omitted) ("[A]n isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion."). Unlike the prison officials in *Gallagher*, Chaplain Cannon did not untimely approve a request for special provisions needed to observe a religious holiday, he outright denied Mr. Ralston's request for a kosher diet. It is undisputed that Mr. Ralston was not provided a kosher diet from December 20, 2013 to February 4, 2014. Considering that every meal Mr. Ralston received for more than a month was non-kosher, it is reasonable to infer that this denial substantially burdened his sincerely-held religious beliefs. *See Abdulhaseeb v. Calbone*, 600 F.3d [1301, 1321 (10th Cir. 2010)] ("[W]e assume that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden . . . [.]").

Dist. Ct. Order at 10 (record citations omitted).

followers of a particular creed. Moreover, the guarantees of the First Amendment are not limited to beliefs shared by all members of a religious sect. Instead, plaintiff is entitled to invoke First Amendment protection if his religious beliefs are sincerely held." (citations omitted)). Given all this, the district court determined that a reasonable juror could "infer from these facts that Chaplain Cannon was aware that denying the request would interfere with Mr. Ralston's free exercise of religion given his repeated, direct communication with Mr. Ralston about the necessity of a strict kosher diet in the Messianic Jewish faith." Dist. Ct. Order at 11.

### III. ANALYSIS

On appeal, Cannon asserts the district court erred in denying his request for qualified immunity. According to Cannon, the evidence adduced on summary judgment does not establish a violation of Ralston's First Amendment right to free exercise. To be clear, however, Cannon does not challenge the district court's determination that a conscious or intentional interference which amounts to a substantial burden on a prisoner's right to free exercise amounts to a constitutional violation. *See supra* n.2. Indeed, that is the very standard Cannon asked the district court to apply. Instead, he asserts the summary judgment record does not establish that he acted with the requisite state of mind.[6] Cannon's

---

[6]*See* Cannon's Opening Brief at 8-9 ("[B]ased on the information available to him at the time, it was reasonable for Chaplin Cannon to believe that adherence
(continued...)

assertion that the constitutional right at issue is not clearly established also relies upon a claim that the summary judgment record establishes nothing more than that his conduct was reasonable, well-intentioned, or, at most, negligent.[7]

As this court has made clear, "[o]rders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291." *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013). We do, however, have jurisdiction under the collateral order doctrine to review a state official's appeal from the denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves abstract issues of law. *Id.*; *see*

---

[6](...continued)
to a strict kosher diet was not required by Mr. Ralston's sincerely held religious beliefs."); *id.* at 9 ("To the extent that Chaplain Cannon was mistaken in this determination, this amounts to, at most, an isolated act of negligence rather than a conscious interference with Plaintiff's First Amendment rights."); *id.* at 10 ("The record is undisputed that, at the time that Chaplain Cannon denied Mr. Ralston's kosher diet request on January 2, 2013, Chaplain Cannon believed that a kosher diet was unnecessary to conform with Mr. Ralston's sincerely held religious beliefs."); *id.* ("The fact that Chaplain Cannon consulted with a Messianic Jewish advisor—who counseled that the DDC's standard non-pork, non-shellfish diet was appropriate for Messianic Jewish inmates—confirms both that Chaplain Cannon acted in good faith and that his belief that Plaintiff did not genuinely require a kosher diet was reasonable under the circumstances."); *id.* at 11 ("Chaplain Cannon's initial belief that Plaintiff did not require a kosher diet was reasonable in light of the information that he possessed at that time. Thus, the denial of Plaintiff's diet request cannot be said to be plainly incompetent or a conscious interference with Plaintiff's First Amendment rights.").

[7]*See* Cannon's Opening Brief at 19 (arguing that in examining whether the right at issue is clearly established, the court must recognize that "the delay here was caused by a reasonable misapprehension of Mr. Ralston's sincere beliefs").

*also Fancher v. Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013); *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266-67 (10th Cir. 2013).

> That is, this court has jurisdiction to review (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation. In contrast, this court has no interlocutory jurisdiction to review whether or not the pretrial record sets forth a genuine issue of fact for trial. The Supreme Court has indicated that, at the summary judgment stage at least, it is generally the district court's exclusive job to determine which *facts* a jury could reasonably find from the evidence presented to it by the litigants. So, for example, if a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, the Supreme Court has indicated we usually must take them as true—and do so even if our own *de novo* review of the record might suggest otherwise as a matter of law.

*Roosevelt-Hennix*, 717 F.3d at 752 (citations, quotations, and alterations omitted); *see also Johnson*, 515 U.S. at 320 (establishing this jurisdictional limitation on appeals from the denial of summary judgment in qualified immunity cases).

It is certainly true that a mere determination on the part of a district court that genuine issues of material fact preclude summary judgment does not necessarily bar this court's exercise of appellate jurisdiction in a particular case. *See Henderson v. Glanz*, 813 F.3d 938, 947-48 (10th Cir. 2015). We have jurisdiction to review such denials of qualified immunity "if our review would [not] require second-guessing the district court's determinations of evidence sufficiency." *Id.* at 948 (quotation omitted). This court, then, has jurisdiction over appeals challenging the denial of a qualified-immunity-based motion for

summary judgment only if a defendant-appellant does not dispute the facts a district court determines a reasonable juror could find but, instead, "raises only legal challenges to the denial of qualified immunity based on those facts." *Id.*

As should be clear from the background set out above, Cannon does not assert on appeal that a conscious or intentional interference with Ralston's right to free exercise, whether relatively brief or not, is consistent with the First Amendment.[8] Nor does he assert that it was not clear during the time period in question that an intentional or conscious placement of a substantial burden on Ralston's right to free exercise would violate the First Amendment. Instead, he simply asserts the district court erred in determining a reasonable juror could conclude he acted intentionally or consciously. This court lacks jurisdiction to

---

[8]It is not surprising that Cannon does not make such an assertion on appeal because this court has not been able to locate a single authority supporting such a rule. There are cases noting that isolated and infrequent denials of required kosher diets do not amount to a constitutional violation. *See, e.g., Gallagher*, 587 F.3d at 1070. But each such case this court has been able to identify has been based on a conclusion that the relevant record simply cannot support a determination of intent on the part of the relevant government official. *Id.* (concluding the facts set out in the complaint did not raise a viable inference of intent but, instead, amount to an "isolated instance of negligence"). Here, on the other hand, the district court determined a reasonable juror could conclude Cannon acted consciously or intentionally. *See McKinley*, 493 F. App'x at 933 (unpublished disposition cited merely for its persuasive value) (distinguishing *Gallagher* on this exact basis and holding that an allegation of "intentional" interference with the right to attend religious services for one month stated a free exercise claim). In particular, we note that in the Sixth Circuit's decision in *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010), upon which Cannon heavily relies, the court took pains to note there was no evidence in the record indicating the denial of the plaintiff's kosher meals amounted to a "knowing" denial of the plaintiff's civil rights. *Id.* at 291, 293.

take up such an issue in an interlocutory appeal from the denial of summary judgment.

In closing, this court notes that the jurisdictional limitation at issue in this appeal has been in place since the Supreme Court's decision in *Johnson*, 515 U.S. at 319-20, more than twenty years ago. *Johnson* made clear that allowing appeals from district court determinations of evidentiary sufficiency simply does not advance the goals of the qualified-immunity doctrine in a sufficiently weighty way to overcome the delay and expenditure of judicial resources that would accompany such appeals. *Id.* at 315-17.[9] It certainly follows, then, that appeals like the instant one that flaunt the jurisdictional limitations set out in *Johnson* serve only to delay the administration of justice. *See id.* That being the case, this

---

[9]In so concluding, the Court noted with particularity that pretrial questions about the existence or nonexistence of intent are particularly inappropriate for interlocutory appeal:

> [Q]uestions about whether or not a record demonstrates a "genuine" issue of fact for trial, if appealable, can consume inordinate amounts of appellate time. Many constitutional tort cases . . . involve factual controversies about, for example, intent—controversies that, before trial, may seem nebulous. To resolve those controversies—to determine whether there is or is not a triable issue of fact about such a matter—may require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials. This fact means, compared with [interlocutory appeals involving abstract issues of law], greater delay.

*Johnson v. Jones*, 515 U.S. 304, 316 (1995).

court expects practitioners will be cognizant of, and faithful to, the jurisdictional limitation set out in *Johnson*.

## IV. CONCLUSION

For those reasons set out above, this appeal is **DISMISSED** for lack of appellate jurisdiction.