**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TAUNYA PERRY,

     Plaintiff - Appellee,

v.

No. 17-5023

TERRY DURBOROW, in his individual
capacity,

     Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:15-CV-00095-CVE-FHM)**
_____

Ambre C. Gooch, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma (Jordan L.
Miller, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma, with her on the briefs),
for Defendant-Appellant.

Robert M. Blakemore, Smolen, Smolen & Roytman, PLLC, Tulsa, Oklahoma (Daniel E.
Smolen, Smolen, Smolen & Roytman, PLLC, with him on the briefs), for Plaintiff-
Appellee.

_____

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

   Defendant Terry Durborow appeals the district court's order denying his

motion for summary judgment on the basis of qualified immunity in this 42 U.S.C.

§ 1983 action. On appeal, Durborow doesn't challenge the district court's conclusion that he committed a constitutional violation. Instead, he argues only that—even assuming he violated the Constitution—the district court erred in finding that the contours of the constitutional right at issue were clearly established. We agree. Accordingly, we reverse the district court's order and remand with directions to enter summary judgment in Durborow's favor.

### Background

Plaintiff Taunya Perry was arrested and booked into the Ottawa County Jail (the Jail) on December 28, 2012. According to Perry, detention officer Daniel Clements raped her approximately two months later, on February 25, 2013.

As a result of the alleged rape, Perry brought suit against Durborow under § 1983, asserting that as the Ottawa County Sheriff, Durborow was responsible for the alleged rape under a theory of supervisory liability. In response, Durborow moved for summary judgment, arguing that he was entitled to qualified immunity.

The district court denied Durborow's motion. In doing so, the district court relied primarily on four factual findings. For purposes of resolving this interlocutory appeal, we accept these facts as true and recite them below. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014).

First, the district court noted that the Oklahoma Department of Health's "Jail Standards" prohibited male detention officers from entering the Jail's female pod unless there was "an emergency." App. 565. Yet for much of Durborow's tenure as sheriff, the Jail hired only male detention officers. Thus, in the absence of any female

2

detention officers, it should come as no surprise that—as the district court found—male detention officers frequently entered the female pod in non-emergency situations.

Second, citing the absence of any female detention officers, the district court inferred that Durborow was necessarily aware that the male detention officers were entering the female pod in non-emergency situations.

Third, the district court found that Durborow was also aware of "blind spots" in the Jail's video surveillance system: the system didn't monitor certain areas of the female pod, including the pod's individual cells, its showers, and its mechanical room. *Id.* at 577. These "blind spots" were also "known to inmates and detention officers." *Id.*

Fourth, although Perry asserted that "there was a history of female inmates being sexually assaulted at [the] Jail and that Durborow was aware of these incidents," the district court found insufficient evidence to support this assertion and therefore declined to consider it in determining whether Durborow was entitled to qualified immunity. App. 575. Instead, the district court seemed to credit Durborow's assertion that, as of February 25, 2013, Durborow "had received only one allegation of sexual misconduct by a jail employee during his tenure as Sheriff." *Id.* at 568. Specifically, in 2008, "a female inmate alleged that she had been sexually assaulted" by a jail employee during her time there. *Id.* But the inmate later recanted, indicating that her allegation was the result of "a psychotic episode." *Id.* Based on the inmate's "admission" and interviews with "approximately 20 witnesses," the Oklahoma State

3

Bureau of Investigation ultimately concluded that "no sexual assault had occurred." *Id.*

Relying on these findings, the district court ruled that a reasonable jury could conclude Durborow was "deliberately indifferent to the health and safety of [the Jail's] female inmates." *Id.* at 578. And based on this conclusion, the district court then determined that Durborow wasn't entitled to qualified immunity because (1) Perry established "a violation of her constitutional rights" under the Eighth and Fourteenth Amendments, and (2) "the right of a female inmate to be protected from sexual assault is a clearly established right." *Id.* Thus, the district court denied Durborow's motion for summary judgment. Durborow appeals.

## Analysis

### I. Jurisdiction

Before addressing the merits of Durborow's challenge to the district court's order denying his motion for summary judgment, we must first ensure we have jurisdiction to address that challenge at all. *See Apodaca v. Raemisch*, 864 F.3d 1071, 1074 (10th Cir. 2017).

As discussed above, the district court relied on four factual findings in determining that Durborow wasn't entitled to qualified immunity. And Durborow's opening brief repeatedly takes issue with one of these four findings. So does his reply brief. Specifically, Durborow doggedly insists that to the extent the Jail's male detention officers were freely entering the female pod in violation of the Jail's emergencies-only policy, he remained unaware of that fact. For instance, both

4

Durborow's opening brief and his reply brief state that to the extent the "male officers allegedly enter[ed] the female pod against policy and training," they did so "without Durborow's knowledge." Aplt. Br. 21; Rep. Br. 8.

Durborow's repeated challenges to this key factual finding would normally deprive us of jurisdiction over this interlocutory appeal. *See Cox v. Glanz,* 800 F.3d 1231, 1242 (10th Cir. 2015) (explaining that although we typically lack jurisdiction to review an order denying summary judgment, "[t]he denial of qualified immunity to a public official . . . is immediately appealable"—but only "to the extent it involves abstract issues of law" (alterations in original) (quoting *Fancher v. Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013))); *Castillo v. Day*, 790 F.3d 1013, 1018 (10th Cir. 2015) (dismissing interlocutory appeal from denial of qualified immunity for lack of jurisdiction because defendant's "argument [wa]s limited to a discussion of her version of the facts and the inferences that c[ould] be drawn therefrom" and thus was "actually a challenge to the district court's conclusion" that plaintiffs "presented sufficient evidence to survive summary judgment").

But Durborow unequivocally—if belatedly—clarified at oral argument that he accepts all of the district court's factual findings as true for purposes of this interlocutory appeal. And that concession necessarily includes the district court's finding that Durborow was aware the male detention officers were entering the female pod on a regular basis and in violation of the Jail's emergencies-only policy. Thus, we reject Perry's argument that we lack jurisdiction to resolve the purely legal question before us. *See Cox*, 800 F.3d at 1243 (exercising jurisdiction over appeal

5

from denial of summary judgment on qualified-immunity grounds because defendant accepted plaintiffs' version of facts for purposes of appeal; noting that such concession will "ordinarily . . . permit us to address the legal issues presented by the agreed-upon set of facts"). Instead, we will proceed to address whether, based on "[t]he district court's factual findings and reasonable assumptions," Durborow is entitled to qualified immunity. *Id.* at 1242; *see also id.* (explaining that district court's findings and assumptions make up "the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity" (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008))).

But before we address the legal issue before us, we hasten to add this caveat: A defendant who brings an interlocutory appeal like this one and then "challenge[s] . . . the district court's determinations of evidentiary sufficiency" (as Durborow initially and repeatedly did here) does so at his or her own peril. *Ralston v. Cannon*, 884 F.3d 1060, 1062 (10th Cir. 2018); *see also id.* at 1067 (dismissing interlocutory appeal from denial of qualified immunity for lack of jurisdiction where defendant "assert[ed] the district court erred in determining a reasonable juror could conclude he acted intentionally or consciously"). As we pointed out in *Ralston*, the "jurisdictional limitation" at issue here "has been in place" for more than two decades. *Id.* at 1067. Thus, we "expect[] practitioners [to] be cognizant of, and faithful to" this limitation throughout *the entire course* of interlocutory appeals like this one, *id.* at 1068—not just when they are pressed, at oral argument, to abandon the factual challenges they repeatedly advance in their briefs.

6

## II.    The Merits

"Qualified immunity 'protects governmental officials from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To that end, when a defendant asserts a qualified-immunity defense at summary judgment, we require the plaintiff "to shoulder" a heavy two-part burden to survive the defendant's assertion. *Cox*, 800 F.3d at 1245. First, "[t]he plaintiff must demonstrate on the facts alleged . . . that the defendant violated his [or her] constitutional or statutory rights." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Second, the plaintiff must demonstrate "that the right was clearly established at the time of the alleged unlawful activity." *Id.*

Here, the district court ruled that Perry made both of these showings. Specifically, it ruled that on the facts as alleged, Perry demonstrated (1) Durborow violated her Fourteenth Amendment right as "a female inmate to be protected from sexual assault" and (2) that right was clearly established at the time of the alleged violation. App. 578.

Critically, Durborow opts not to dispute the district court's ruling that he violated Perry's constitutional rights. Instead, he focuses solely on the second prong of the qualified-immunity analysis. That is, Durborow argues only that even assuming Perry demonstrated a constitutional violation, he is nevertheless entitled to qualified immunity because, as of February 25, 2013, no "clearly established law . . .

7

would . . . have put a reasonable official in [his] position on notice that his supervisory conduct" violated Perry's constitutional rights. *Cox*, 800 F.3d at 1247. Accordingly, the only question before us in this appeal is whether the district court erred in ruling that the law was clearly established. Nevertheless, we begin by sketching the general contours of the constitutional inquiry to provide a framework for our subsequent discussion of the clearly-established analysis.

## A. The Constitutional Violation

In determining whether Perry satisfied the first step of the qualified-immunity analysis, the relevant question before the district court wasn't whether Clements violated Perry's constitutional rights by raping her. To be sure, Perry had a constitutional right not to be raped by a detention officer in the facility where she was being detained. *See Keith v. Koerner (Keith II)*, 843 F.3d 833, 837 (10th Cir. 2016) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." (alteration in original) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993))); *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. In determining whether [pretrial detainee's] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."). But Perry doesn't assert that Durborow himself raped her. Instead, she asserts that Durborow is liable for the rape under a theory of supervisory liability.

8

Yet § 1983 doesn't "authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). Instead, to satisfy the first prong of the qualified-immunity test in this case, Perry had to demonstrate that Durborow *personally* violated her constitutional rights. *See Keith II*, 843 F.3d at 837. To do that here, Perry had to "show an 'affirmative link' between" Durborow and the rape. *Schneider* 717 F.3d at 767 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). And to demonstrate such an "affirmative link," *id.* (quoting *Dodds*, 614 F.3d at 1195), Perry had to establish "(1) personal involvement; (2) causation, and (3) state of mind," *id.*

Perry could satisfy the personal-involvement requirement by showing that, e.g., Durborow was responsible for but "failed to create and enforce policies to protect" her from the rape. *Keith II*, 843 F.3d at 840. To establish causation, she had to show that Durborow "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive [Perry] of her constitutional rights." *Id.* at 847 (quoting *Schneider*, 717 F.3d at 768). Finally, in the context of a Fourteenth Amendment claim like this one, Perry could establish the requisite state of mind by showing that Durborow "acted with deliberate indifference." *Id.* at 847–48 ("[A] § 1983 plaintiff alleging an Eighth Amendment violation must prove that the defendant acted with deliberate indifference."); *see also Lopez*, 172 F.3d at 759 n.2 (explaining that in determining whether pretrial detainee's Fourteenth

9

Amendment rights were violated, "we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983").

In turn, the deliberate-indifference test itself has three requirements. Perry had to show (1) that Durborow was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) that he actually drew that inference;[1] and (3) that he was "aware of and fail[ed] to take reasonable steps to

---

[1] Because Perry was a pretrial detainee at the time of the alleged rape, we question whether, in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), she had to demonstrate that Durborow "acted with subjective deliberate indifference, as opposed to objective deliberate indifference," to establish that he violated her constitutional rights. *Darnell v. Pineiro*, 849 F.3d 17, 38 (2d Cir. 2017); *cf. also id.* at 35 (citing *Kingsley* for proposition that, unlike Eighth Amendment, Fourteenth Amendment's "Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm"); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (citing *Kingsley* and holding that although plaintiff advancing Eighth Amendment conditions-of-confinement claim must demonstrate that defendant-official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and actually "dr[e]w th[at] inference," "a pretrial detainee need not prove those subjective elements about the officer's actual awareness of the level of risk" (quoting *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002))), *cert. denied*, 137 S. Ct. 831 (2017).

We haven't yet addressed *Kingsley*'s impact on Fourteenth Amendment claims like this one. And in the absence of briefing from either party, we decline to do so here, where resolution of the issue would have no impact on the result of this appeal. Even assuming Perry had to demonstrate that Durborow acted with subjective deliberate indifference, we must accept as true the district court's finding that he did so. *See Cox*, 800 F.3d at 1242. Conversely, even assuming Perry only had to demonstrate that Durborow acted with objective deliberate indifference, this lower standard wasn't clearly established as of February 25, 2013. *See Riggins*, 572 F.3d at 1107 (noting that to overcome qualified-immunity defense, "plaintiff must demonstrate . . . that the right was clearly established *at the time of the alleged unlawful activity*" (emphasis added)).

10

alleviate that risk." *Keith II*, 843 F.3d at 848 (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)).

For the reasons discussed above, we assume that Perry successfully demonstrated Durborow personally violated her Fourteenth Amendment rights under this framework. Nevertheless, Durborow is entitled to qualified immunity unless Perry can also show that the law was clearly established at the time of the constitutional violation. *Riggins*, 572 F.3d at 1107.

**B.     Clearly Established Law**

For the law to be clearly established, "[t]he contours of" the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). And the "contours of" a particular right are generally only "sufficiently clear" to put a reasonable official on notice if a plaintiff (1) "identif[ies] an on-point Supreme Court or published Tenth Circuit decision," *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015), or (2) shows "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains," *id.* (quoting *Weise*, 593 F.3d at 1167).

In applying this test, courts must not define the relevant constitutional right "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, as the Supreme Court "explained decades ago, the clearly established law must be 'particularized' to the

11

facts of the case." *Id.* (quoting *Creighton*, 483 U.S. at 640); *see also id.* (holding that lower court "misunderstood the 'clearly established' analysis" when it determined the law was clearly established without first "identify[ing] a case where an officer acting under similar circumstances as [defendant] was held to have violated" relevant constitutional right).

Critically, just as the constitutional-violation question in this case didn't turn on whether Clements violated Perry's constitutional rights by raping her, the clearly-established-law question doesn't turn on whether existing precedent would have put a reasonable detention officer in Clements' position on notice that raping Perry would violate her constitutional rights. Instead, to satisfy the second part of the qualified-immunity test in the context of Perry's supervisory-liability claim against Durborow, Perry must show that as of February 25, 2013, "clearly established law . . . would . . . have put a reasonable official in [Durborow's] position on notice that his *supervisory conduct* would" violate Perry's constitutional rights. *Cox*, 800 F.3d at 1247 (emphasis added). In other words, Perry must "identify a case where an offic[ial] acting under similar circumstances as [Durborow] was held to have violated" the Constitution. *Pauly*, 137 S. Ct. at 552.

In ruling that Perry made this showing, the district court first cited Durborow's knowledge that male detention officers were routinely entering the female pod in violation of the Jail's emergencies-only policy. The court then cited Durborow's knowledge that the Jail's surveillance system didn't monitor the female pod's individual cells, its showers, or its mechanical room. And the court reasoned that the

12

existence of these known "blind spots" allowed male detention officers who entered the female pod in violation of the Jail's emergencies-only policy to remain there for substantial periods of time "without surveillance." App. 576–77.

Taken together, the district court said, these circumstances "gave rise to an increased risk of sexual assault of female inmates" such that "a reasonable jury could find that Durborow was deliberately indifferent to the[ir] health and safety," in violation of the Eighth and Fourteenth Amendments. *Id.* at 578. And because "it is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates" the Constitution, the district court reasoned, Durborow wasn't entitled to qualified immunity. *Id.* (quoting *Keith II*, 843 F.3d at 849).

But as Durborow points out, the district court cited only two cases to support this conclusion: *Keith II*, 843 F.3d 833, and *Cox*, 800 F.3d at 1245. The court cited *Cox* for the threshold principle that a "plaintiff must show that the constitutional right was clearly established when the conduct occurred." App. 578. And it cited *Keith II* for the general proposition that "it is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *Id.* (quoting *Keith II*, 843 F.3d at 849).

We agree with Durborow that these statements of law define the right at issue here at an unacceptably "high level of generality." *Pauly*, 137 S. Ct. at 552 (quoting *al-Kidd*, 563 U.S. at 742). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Creighton*, 483 U.S. at 640). Thus, before the district court could determine the law was clearly established, it had

13

to "identify a case where an offic[ial] acting under similar circumstances as [Durborow] was held to have violated" the Eighth or Fourteenth Amendments under a theory of supervisory liability. *Id.*; *see also Cox*, 800 F.3d at 1247 (asking whether "clearly established law . . . would . . . have put a reasonable official in [defendant's] position on notice that his supervisory conduct would effect an Eighth Amendment violation").

*Cox* is not such a case. There, we assumed the existence of a constitutional violation and held that the right at issue—"an inmate's right to proper prison suicide screening procedures during booking"—wasn't clearly established. *Cox*, 800 F.3d at 1247. Nor is *Keith II*, which we decided almost four years after Perry alleges Clements raped her. *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) ("[C]ases . . . that postdate the conduct in question . . . could not have given fair notice to [defendant-officer] and are of no use in the clearly[-]established inquiry."). True, we stated in *Keith II* that it has been clearly established since 2007 that inmates have a constitutional right "to be free from attack by" prison employees and "to expect reasonable protection from [prison] officials . . . and a reasonable response when sexual misconduct occur[s]." 843 F.3d at 850. But in determining whether Durborow was entitled to qualified immunity, the district court should have looked to the "'particularized' . . . facts" of the cases upon which *Keith II* relied in reaching that conclusion, not to *Keith II*'s "general statements of the law." *Pauly*, 137 S. Ct. at 552 (first quoting *Creighton*, 483 U.S. at 640, then quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Accordingly, to the extent the district court failed to tether its

14

clearly-established analysis to the "'particularized' . . . facts" of any case decided before February 25, 2013, the district court erred. *Id.* (quoting *Creighton*, 483 U.S. at 640).

On appeal, Perry cites additional cases not relied upon by the district court and argues these cases would have put a reasonable official in Durborow's position on notice that his conduct in this case violated the Constitution. Specifically, she cites the Supreme Court's decisions in *Ortiz v. Jordan*, 562 U.S. 180 (2011), and *Farmer v. Brennan*, 511 U.S. 825 (1994), and our decisions in *Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010), *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), *Tafoya*, 516 F.3d 912, *Gonzales v. Martinez*, 403 F.3d 1179 (10th Cir. 2005), *Smith v. Cochran*, 339 F.3d 1205 (10th Cir. 2003), and *Lopez*, 172 F.3d 756.

We disagree that these cases place the constitutional question in this case "beyond debate." *Pauly*, 137 S. Ct. at 551 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In *Farmer*, the Court set forth the appropriate framework for determining whether a prison official's deliberate indifference violates the Eighth Amendment. 511 U.S. at 837. But it didn't apply that framework to the facts of the case; instead it remanded the constitutional question to the lower court for resolution. *See id.* at 849, 851. Similarly, the constitutional question wasn't before the Court in *Ortiz*; there, the Court addressed (1) whether a party may "appeal an order denying summary judgment after a full trial on the merits, 562 U.S. at 184; *see also id.* at 187–88, and (2) "the effect of [the defendant-officials'] failure to renew their motion

15

for judgment as a matter of law under Federal Rule of Civil Procedure 50(b)," *id.* at 192 (Thomas, J., concurring in the judgment).

We at least reached the constitutional question in *Bryson*. But we held that the plaintiff there failed to "present[] sufficient evidence to support a finding of deliberate indifference." 627 F.3d at 789. And in *Dodds*, we both reached the constitutional question *and* found a constitutional violation. But in that case, the plaintiff alleged the defendant-official violated his Fourteenth Amendment rights under a theory of supervisory liability by "depriving him of his protected liberty interest in posting bail." 614 F.3d at 1189, 1194–95. Thus, that case illuminated the contours of the right not to be "imprisoned . . . for longer than legally authorized." *Id.* at 1192 (quoting *Holder v. Town of Newton*, 638 F. Supp. 2d 150, 153 (D.N.H. 2009)). It "would not have put a reasonable official in [Durborow's] position on notice that his supervisory conduct" in this case—i.e., his alleged failure to protect Perry from the known risk of sexual assault—violated the Constitution. *Cox*, 800 F.3d at 1247. And the same is true of *Smith*. Although that case involved the sexual assault of a prisoner, the plaintiff in that case brought suit against the individual who actually assaulted her—not that individual's supervisor. 339 F.3d at 1208, 1210. Thus, *Smith* says nothing about what kind of "supervisory conduct" might suffice to violate the Eighth or Fourteenth Amendments. *Cox*, 800 F.3d at 1247.

That leaves *Tafoya*, 516 F.3d 912, *Gonzales*, 403 F.3d 1179, and *Lopez*, 172 F.3d 756. In each of these cases, we found the evidence sufficient to demonstrate that the defendants failed to protect the plaintiffs from a known risk of assault. And we

16

also found that the defendants' conduct violated the plaintiffs' Eighth or Fourteenth Amendment rights under a theory of supervisory liability. *See Tafoya*, 516 F.3d at 915 ("Because we find that [defendant] was aware of prison conditions that were substantially likely to result in the sexual assault of a female inmate, and conclude that a jury might infer that the assaults on [plaintiff] were caused by these dangerous conditions, we reverse."); *Gonzales*, 403 F.3d at 1180–81 (reversing district court's ruling that plaintiff failed to establish constitutional violation where plaintiff presented evidence showing that "jail officials knew of the substantial risk of physical harm to prisoners in their facility and failed to take reasonable measures to prevent its recurrence"); *Lopez*, 172 F.3d at 763–64 ("[M]aterial issues of fact remain concerning whether the county had a policy of providing insufficient monitoring and supervision of inmates and insufficient staffing, held with deliberate indifference, resulting in unconstitutionally inadequate conditions of confinement, which policy was the moving force, as a matter of law, behind the attack on appellant.").

But in each of these cases, the defendant-supervisors weren't just aware of the risk that such assaults might occur. Instead, in each of these cases, the defendants were aware that those known risks had, in fact, *already previously materialized*. For instance, by the time of the alleged constitutional violation at issue in *Tafoya*, the defendant-sheriff had already "faced three civil suits" arising from sexual assaults on female inmates by male detention officers. 516 F.3d at 915. And we relied heavily on the defendant's knowledge of these previous assaults in reversing the district court's order granting the defendant's motion for summary judgment. *Id.* at 915, 917, 921.

17

Likewise, in *Gonzales*, we relied in part on the defendant-sheriff's knowledge of other misconduct—including sexual misconduct—in concluding that the plaintiff-inmate presented sufficient evidence to defeat the defendant's motion for summary judgment. 403 F.3d at 1183–85, 1187–88. And the same is true in *Lopez*, where the defendant was aware of "at least one prior attack at the jail." 172 F.3d at 761.

Here, on the other hand, the district court declined to credit Perry's assertions that Durborow was aware of any previous sexual assaults at the jail as of February 25, 2013. And as we explain above, for purposes of this interlocutory appeal, the district court's findings and assumptions make up "the universe of facts upon which we base our legal review." *Cox*, 800 F.3d at 1242 (quoting *Fogarty*, 523 F.3d at 1154). Thus, in the absence of any finding by the district court that Durborow was aware of at least one previous assault at the Jail, neither *Tafoya*, 516 F.3d 912, *Gonzales*, 403 F.3d 1179, nor *Lopez*, 172 F.3d 756, were sufficient to "place[] the . . . constitutional question" in this case "beyond debate." *Pauly*, 137 S. Ct. at 551 (quoting *Mullenix*, 136 S. Ct. at 308).[2]

---

[2] For the same reason, our holding in *Keith v. Koerner (Keith I)*, 707 F.3d 1185 (10th Cir. 2013), also did not "place[] the . . . constitutional question" in this case "beyond debate." *Pauly*, 137 S. Ct. at 551 (quoting *Mullenix*, 136 S. Ct. at 308).

Perry cited *Keith I* for the first time at oral argument. Thus, we could potentially treat as waived and decline to consider her belated assertion that *Keith I* clearly establishes the contours of the right at issue here. *See Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1292 n.10 (10th Cir. 2017) ("This argument is waived because it was presented for the first time at oral argument."), *cert. denied*, 138 S. Ct. 1267 (2018). But we need not definitively resolve whether Perry waived her *Keith I* argument. Even if she didn't, we would reject that argument on the merits. Like the defendants in *Tafoya*, *Gonzales*, and *Lopez*, the defendant in *Keith I* was aware that the relevant

18

In reaching this conclusion, we do not mean to suggest that "[a] prior case" must have "identical facts" before it will put reasonable officials on notice that their specific conduct is unconstitutional. *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017); *see also Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("We cannot find qualified immunity wherever we have a new fact pattern."). And we recognize that there are indeed factual similarities between this case and *Tafoya*. In particular, the defendants in both cases were sheriffs who knew of blinds spots in their jails' video surveillance systems and also knew that male officers were violating policies designed to restrict their contact with female inmates. *See Tafoya*, 516 F.3d at 918–19. Nevertheless, the fact that Durborow was unaware of any previous sexual assaults at the Jail remains a critical distinction. And in light of this distinction, *Tafoya* wouldn't have "put a reasonable official in [Durborow's] position on notice that his supervisory conduct" in this case—which amounted to knowingly allowing the Jail's male detention officers to enter the female pod in violation of policy and without adequate supervision and monitoring—violated the Constitution. *Cox*, 800 F.3d at 1247; *cf. Hovater*, 1 F.3d at 1068 (rejecting conclusion "that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone" in absence of evidence "to support that conclusion").

---

risk had already materialized. *See Keith I*, 707 F.3d at 1186, 1189 (noting that plaintiff's complaint identified facts "that could support a conclusion that [defendant] was aware of multiple incidents of unlawful sexual conduct at [correctional facility where he served as warden]," including "at least 54 incidents of sexual misconduct and 33 incidents of undue familiarity"). Here, on the other hand, we must accept the district court's rejection of Perry's assertion that Durborow was aware of previous assaults at the Jail. *See Al-Turki*, 762 F.3d at 1191. Accordingly, this argument fails.

In short, the district court erred in concluding that the law was clearly established without first "identify[ing]" in its order "a case where an officer acting under similar circumstances as [Durborow] was held to have violated" the Eighth or Fourteenth Amendments. *Pauly*, 137 S. Ct. at 552. And in the absence of a finding that Durborow was aware of any previous incidents of sexual assault at the Jail, none of the cases that Perry identifies on appeal "place[] the . . . constitutional question" in this case "beyond debate" either. *Id.* at 551 (quoting *Mullenix*, 136 S. Ct. at 308). Accordingly, Durborow is entitled to qualified immunity. We therefore reverse the district court's order denying Durborow's motion for summary judgment and remand with directions to enter summary judgment in his favor.