**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MICHELE CHOATE, individually and on
behalf of the heirs and estate of Deanne
Choate,

     Plaintiff - Appellee,

v.

ROBERT HUFF; JUSTIN MOHNEY;
JEFF BRENEMAN,

     Defendants - Appellants,

and

CITY OF GARDNER, KANSAS,

     Defendant.

No. 18-3157
(D.C. No. 2:16-CV-02118-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **HOLMES**, Circuit Judges.
_____

In this interlocutory appeal, three police officers challenge the district court's

denial of their motion for summary judgment based on qualified immunity.

Because our jurisdiction in a qualified immunity interlocutory appeal is limited

to purely legal issues, "we 'take, as given, the facts that the district court assumed

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

when it denied summary judgment.'" *Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)); *see also Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) ("[I]t is generally the district court's exclusive job to determine which facts a jury could reasonably find from the evidence presented to it by the litigants." (emphasis omitted)).

Here, the district court identified the following facts that could be found by a jury: On March 26, 2015, various police officers, including Defendants Robert Huff, Justin Mohney, and Jeff Breneman, responded to a 911 call at a Kansas residence shared by decedent Deanne Choate and her boyfriend. The boyfriend had made the 911 call and told the dispatcher that Ms. Choate had been drinking, had fired a gun, and was possibly suicidal. After arriving at the residence, the officers removed the boyfriend from the house and located Ms. Choate in bed, apparently naked and intoxicated or groggy. The officers asked Ms. Choate about the gun and issued various commands, including inviting her to produce the gun, which they (correctly) suspected was under the covers of her bed. The officers opted against physically restraining her because she was naked. After more than four minutes, during which the officers repeatedly asked about the firearm, Ms. Choate stated, "It's right here." Within a few seconds after she made this statement, Officer Huff and Officer Mohney discharged their weapons, killing Ms. Choate. A reasonable jury could disbelieve these officers' testimony that Ms. Choate pointed a gun at them. Rather, the jury could find that Ms. Choate never removed her gun from under the covers of her bed and the officers instead reacted to her statement about the gun. Officer

2

Breneman was the lead officer during the incident and had the most contact with Ms. Choate prior to the shooting, but he did not discharge his firearm or direct the other officers to discharge theirs.

This § 1983 action was brought by Ms. Choate's daughter against Officer Huff, Officer Mohney, Officer Breneman, and the City of Gardner, Kansas. The only claim at issue in this appeal is Plaintiff's excessive-force claim against the three officers. The officers sought summary judgment based on qualified immunity, but the district court denied summary judgment as to all three officers. This interlocutory appeal followed.

We first consider Officer Huff and Officer Mohney's challenge to the district court's decision. These officers argue that they are entitled to qualified immunity because they used reasonable force against a perceived threat based on their reasonable belief that Ms. Choate was pointing a firearm at them. They contend that "the 'version of events' the district court h[eld] a reasonable jury could credit 'is blatantly contradicted by the record'"—specifically, by the officers' body camera footage—permitting us to "assess the case based on our own *de novo* view of which facts a reasonable jury could accept as true." *Lewis*, 604 F.3d at 1225–26 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). They further argue that, despite the district court's conclusion that there is a dispute of fact as to whether Ms. Choate actually pointed a gun at them, they can still establish based on their undisputed testimony that they reasonably *perceived* her to be pointing a gun at them, thus entitling them to qualified immunity.

3

We have reviewed the footage from each officer's body camera. This footage is unclear and far from satisfying the blatant-contradiction standard for de novo appellate review. As for the officers' attempted parsing of the question regarding whether Ms. Choate was or could have been perceived to be pointing a firearm at them, this is precisely the sort of fact-based argument that we may not consider in an interlocutory appeal of this nature. *See Johnson*, 515 U.S. at 316–20. Officer Mohney and Officer Huff do not raise "'abstract' legal questions" based on the facts identified by the district court, *Lewis*, 604 F.3d at 1225 (quoting *Johnson*, 515 U.S. at 317) (emphasis omitted), but rather ask us, in essence, "to canvass the record" to resolve "factual controversies . . . that, before trial, may seem nebulous," *Johnson*, 515 U.S. at 316–17. Because Officer Mohney and Officer Huff's arguments on appeal are all premised on factual allegations outside "the facts that the district court ruled a reasonable jury could find," *Estate of Booker v. Gomez*, 745 F.3d 405, 409 (10th Cir. 2014) (internal quotation marks omitted), we lack interlocutory jurisdiction over their appeal. *See Ralston v. Cannon*, 884 F.3d 1060, 1062 (10th Cir. 2018).

As to Officer Breneman, however, this appeal does appropriately raise an "abstract legal question[]" as to whether the facts identified by the district court "suffice to show a violation of law" that "was clearly established at the time of the alleged violation." *Lewis*, 604 F.3d at 1225 (internal quotation marks and emphasis omitted). Officer Breneman argues that, even under the facts identified by the district court, he did not violate clearly established law. According to these facts, Officer Breneman was the lead officer on the scene and had the most contact with

Ms. Choate before she was shot, but he did not use any force against her, nor did he direct the other officers' use of force against her. Officer Breneman contends that these facts are insufficient to establish a violation of clearly established law. *See, e.g.*, *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (holding that officer could not be found liable for another officer's use of excessive force where he was present at the scene but did not assist or direct the other officer's actions).

Plaintiff contends that Officer Breneman may be found liable on her excessive force claim precisely because he did not use any force: If he had appropriately handcuffed or otherwise restrained Ms. Choate soon after he entered the room, Plaintiff argues, then the situation could have been de-escalated, preventing events from evolving as they did. Plaintiff further argues that Officer Breneman may be held liable for the other officers' use of force because he also handled the situation poorly by holding an assault rifle while standing near Ms. Choate, demanding that she produce her gun, failing to inform her that they were there to help her, and failing to ask her boyfriend more questions about her mental state.

Plaintiff does not identify a single case in which comparable conduct was found to constitute a constitutional violation. She cites to a case holding that law enforcement officers could be found liable for failing to intervene in other officers' use of excessive force. *See Estate of Booker*, 745 F.3d at 422. That case, however, involved an ongoing assault that lasted over the course of some minutes, during which time the non-participatory officers could have intervened to prevent or stop the assault. *Id.* at 422–23. Plaintiff cites to no cases in which an officer was held liable

5

for another officer's use of force where this use of force was sudden, unannounced, and short in duration. Indeed, in *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), we cited approvingly to a Second Circuit case in which the court held that a defendant had "no duty to intervene when 'three blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them.'" *Id.* at 1164 (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)) (alteration in original). The facts identified by the district court in this case, even taken in the light most favorable to Plaintiff, do not suggest that Officer Breneman could have done anything to prevent the other officers' short, sudden use of force once it began. *Cf. Estate of Booker*, 745 F.3d at 422–23. Thus, Plaintiff's citation to *Estate of Booker* is inapposite.

Plaintiff also attempts to analogize to other cases in which an officer allegedly created the situation in which deadly force became necessary. *See, e.g.*, *Hastings v. Barnes*, 252 F. App'x 197, 203 (10th Cir. 2007); *Allen v. Muskogee*, 119 F.3d 837, 839–41 (10th Cir. 1997). However, none of these cases are sufficiently similar to put an officer in Officer Breneman's position on notice of "the violative nature of [the] *particular* conduct" that allegedly violated the Fourth Amendment in "the specific context of th[is] case." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). Indeed, to the extent the cases Plaintiff cites are similar to the situation here, they weigh against a finding of liability. For instance, in *Allen*, we held that officers could be found liable under the Fourth Amendment where they failed to follow the "fundamental principle[] of maintaining a covered position and

6

trying to communicate with armed emotionally upset persons rather than approaching and physically attempting to disarm them." 119 F.3d at 844. That case, suggesting that conversation is preferable to physical engagement with an emotionally upset and armed individual, cannot have put reasonable officers on notice that they needed to handcuff or otherwise restrain Ms. Choate, rather than try to communicate with her, to avoid violating her right to be free from excessive force. Although Plaintiff also contends that *Allen* stands for the proposition that officers must obtain more information before approaching an armed and suicidal individual, this proposition is too generalized to support her specific argument that Officer Breneman was on notice that it violated Ms. Choate's right to be free from excessive force to fail to ask her boyfriend more questions about her mental state, and the facts of *Allen* are too dissimilar to demonstrate a violation of clearly established law. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

"Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (internal quotation marks and brackets omitted). Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, . . . police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.* at 1153 (internal quotation marks omitted). Plaintiff has not identified any cases holding that an officer violates an individual's constitutional right to be free from excessive force

7

simply by failing to restrain her or to engage in the dialogue that a defense expert, with the benefit of hindsight, believes might have prevented another officer's subsequent unannounced use of force. As Plaintiff has not satisfied her "burden of identifying cases that constitute clearly established law on these facts," *Quinn v. Young*, 780 F.3d 998, 1015 (10th Cir. 2015), Officer Breneman is entitled to qualified immunity on Plaintiff's claim of excessive force against him.

We **REVERSE** the district court's denial of qualified immunity as to Officer Breneman and **REMAND** with instructions for the district court to enter judgment in favor of Officer Breneman on Plaintiff's claim of excessive force. The remainder of this appeal is **DISMISSED** for lack of interlocutory jurisdiction.

Entered for the Court


Monroe G. McKay
Circuit Judge